### GRECO v MOOSBRUGGER DRUG CO.

Ohio Appeals, 2nd Dist.,
Montgomery Co.

No. 1712. Decided April 2, 1942.

Clyde H. Miller, Dayton, for plaintiff-appellant.

Baggott & Baggott, Dayton, for defendant-appellee.

OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment of the Common Pleas Court dismissing the petition of the plaintiff and assessing costs against the defendant. The plaintiff appeals.

The petition alleges that the plaintiff is a minor 18 years of age; that the defendant operates a drug store in the city of Dayton in which store, at times mentioned in this petition, he had and operated a department in which he has sold foods, in both solid and liquid form, for consumption on the premises "and which amounted to and constituted a restaurant within the meaning and contemplation of the Mandatory Order No. 3 hereinafter mentioned and quoted from";

that the plaintiff was employed by and worked for the defendant for a period set forth in the petition carrying on various duties among which was the selling and serving of foods and drinks, and making up fountain syrups, and that in violation of Mandatory Order No. 3 issued by the Division of Minimum Wage of the Department of Industrial Relations of the State of Ohio governing minimum wages to be paid to minors employed in establishments at occupations relating to foods in solid or liquid form, the defendant had paid to the minor a lesser sum than the minimum wage provided in said order. The prayer of the petition was for the balance claimed to be due the plaintiff by reason of Mandatory Order No. 3 with interest, costs and allowance for attorney fees.

The defendant answering, after admitting certain formal averments of the petition, denies that during the employment of plaintiff he operated a restaurant department in his drug store and denies that his place of business is an establishment covered by Mandatory Order No. 3 and generally denies all other averments of the petition not expressly admitted.

Upon issues thus drawn, the cause was submitted to the trial judge upon an agreed statement of facts which, insofar as germane here, recites that Mandatory Order No. 3, which is made an exhibit, was in force and effect during the periods of employment of plaintiff; that the defendant operated a drug store in which was a fountain for dispensing sodas and soft drinks at which was a bar or counter where patrons of the drug store could and did stand and eat and drink that which was served them in the drug store and that also there were five tables, at each of which were four chairs, where customers were served with those

things dispensed from the soda fountain; that the plaintiff prepared and mixed sodas, sundaes, soft drinks and served them with other items among which were small cakes or cookies, pretzels, not prepared on the premises, packaged crackers of various kinds and in the drug store there was also carried other articles including candy, candy mints, assorted nuts, etc. It is further stipulated that the defendant did not hold himself out to the public as being prepared to serve meals, lunches, pies, soups, vegetables, meats, etc., and that he did not have a restaurant license and was not required to have one by the Health Department of the City of Dayton, Ohio. It is further agreed "that the question presented for decision of the court is whether the defendant in operating his drug store and selling therein the items set forth in the stipulation during the periods mentioned, was operating an 'establishment' coming within the definitions or covered by Mandatory Order No. 3."

It might be said at this juncture that counsel have been very considerate and correct in stipulating the narrow issue and precise question of law involved in this case. It is seldom that counsel agrees within such narrow limits and we are in full accord with the stipulation.

We need give no consideration to the authority or power of the director, observing the provisions of §§154-45(d) etc., to issue an order which would compel employers operating soda fountains to pay women and minors in their employ a minimum wage fixed by said order. The question to be determined is, what is the effect of the order which has been regularly and duly promulgated. It provides among other things,

"Minimum fair wage standards governing women and minors at work in establishments at occupations relating to the furnishing of food (in solid or liquid form) or lodging, or both.

. "Women and minors employed in establishments at occupations relating to the furnishing of food (in solid or liquid form) or lodging, or both, shall be paid a minimum fair wage at rates not less than the following:"

Then are set forth the rates.

"Definitions. For the purpose of this order the following meanings shall be attached to the words defined:

"1. Establishments covered by Mandatory Order No. 3.

"(a) **All restaurants, licensed or unlicensed, no matter by whomsoever operated, whether said restaurants be operated as the principal business of the employer or as a department or unit of another business,** and all restaurants operated by governmental sub-divisions including boards of education, wherein food in liquid and/or solid form is prepared and served for human consumption or by catering and banquet service, or by box lunch service, or curb service.

"9. (a) 'Meal' as used in this order means any quantity or liquids and/or solids sufficient to satisfy the average hunger for a person utilizing normal energy in the course of her or his work, the said liquids or solids to be of good quality, freshly prepared, adequately seasoned and cleanly served either in an employees dining room or in any other sanitary room apart from the kitchen.

"(b) 'Food' means any consumable article, cooked or uncooked, prepared or ready to eat or drink; and beverages such as milk, fruit and/or vegetable juices of any and all flavors; and ice cream in its several varied forms."

The word "meal" which is satisfactorily defined above is employed but once in the order and there it has application to an increase in rate of pay to an employee who is not by his employer furnished with the required number of meals each day for the number of hours worked. It is the claim of the plaintiff that inasmuch as food clearly includes ice cream and many of the other articles dispensed at the soda fountain of the defendant, the preparing and serving of this food makes the place where it is dispensed a restaurant.

We are of the opinion that to be a violation of the order, the sale of that which constitutes food must be in an establishment as defined by the order. It is our judgment that only that part of 1 (a) defining establishments, which we have emphasized, has application in the instant cause. That part which follows is without effect. If it had application, there is a nice question if any thing dispensed at the soda fountain of defendant was prepared and served in the place of business of defendant.

The simple question then is whether or not the soda fountain operated by the defendant is a restaurant as commonly understood or as defined in our Code. There is a definition of "restaurant" under the chapter relating to the duties of the state fire marshall with respect to hotels, restaurants, etc., which definition is comprehensive and will answer very well in construing the term as employed in the minimum wage order.

"Sec. 843-2 GC. Every building, or other structure kept, used, maintained, advertised or held out to the public to be a place where meals or lunches are served for consideration, without sleeping accommodations, shall for the purpose of this act be defined to be a restaurant."

A lunch or meal implies that that which will be served is more substantial in satisfying the normal appetite than that which is served at a soda fountain such as is operated in the instant case. A normal person certainly would not consider that the food and drink which he could secure at the defendant's soda fountain would constitute a meal one day after another and while it might provide subsistence it surely would not meet the demand of normal living.

The establishments covered by Mandatory Order No. 3 in its first part contemplates the places where meals are served as commonly understood or as defined in the Code. It is our judgment that the purpose of the order, as determined from the language employed, is to apply the rule only to establishments which, in this instance, must be a restaurant operated either as the principal business of the employer or as the department or unit of another business. The place operated by the defendant as a soda fountain, with no service of lunches or meals, is not such an establishment and the failure to pay the plaintiff the wages fixed by the order was no violation thereof and the judgment of the trial court to that effect is correct. It will be affirmed.

GEIGER, PJ. and BARNES, J. concur.